UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHIRLEY LANGSTON and
JOHN LANGSTON,

    Plaintiffs,

v.                                    Case No. 8:20-cv-2954-T-33AAS

TEXAS CAPITAL BANK, NATIONAL
ASSOCIATION, as Administrative
Agent, Swing Line Lender,
and L/C issuer,

    Defendant.
_____/

### ORDER

This matter comes before the Court upon consideration of Plaintiffs Shirley Langston and John Langston's Amended Motion to Abstain and Remand (Doc. # 9), filed on December 16, 2020. Defendant Texas Capital Bank National Association ("TCB") responded on January 12, 2021. (Doc. # 35). For the reasons that follow, the Motion is denied.

I.   **Background**

The factual background and procedural history of this case are complex. The Langstons, who are husband and wife, are plaintiffs in a medical malpractice lawsuit against a physician with the Laser Spine Institute, LLC ("LSI"), regarding a back surgery Mrs. Langston underwent there in

1

2016. (Doc. # 33 at 9-13). In March of 2019, LSI and its affiliates filed a Petition for Assignment for Benefit of Creditors in state court in the Circuit Court of Hillsborough County, Florida (the "Petition") and ceased operations. (Id. at 13).

The Langstons maintain that LSI "caused LSI's employee physicians to fraudulently conceal from patients the fact that LSI's physician employees were practicing medicine in violation of the Financial Responsibility requirements of [Section] 458.320, Fla. Stat.," because those physicians did not maintain the statutorily required malpractice insurance. (Id. at 8). "As of the filing of this lawsuit, LSI contends that it is uninsured and that no funding is available to pay medical malpractice claims." (Id. at 13).

TCB is involved in this case because it loaned LSI over $150,000,000.00 through a 2015 "Credit Agreement" that provided, in pertinent part, that LSI was required to hold $10,000,000.00 in a "Cash Reserve Account" for, in part, the payment of medical malpractice claims. (Id. at 3-5). "TCB had the power to require LSI to maintain the Cash Reserve Account, and TCB retained the 'sole discretion' to waive the Cash Reserve Account only upon (a) LSI's written request and (b) TCB's determination that 'all medical malpractice claims and

potential litigation related to such claims are properly reserved for in the Cash Reserve Account in amounts that are considered commercially reasonable.'" (Id. at 5). Based on this Credit Agreement, TCB claims to hold a perfected lien on all assets of LSI assigned to the Assignee in the Assignment Case. (Id.).

According to the Langstons, "TCB had actual knowledge that LSI was not maintaining customary professional liability insurance as required by Florida law and as required by Section 7.5 of the Credit Agreement." (Id. at 6). "Instead of requiring LSI to comply with Florida law, TCB instead retained sole discretion upon LSI's request to fund LSI's Cash Reserve Account to fund medical malpractice claims, while maintaining a first priority lien on said Cash Reserve Account and thereby maintaining the discretion to apply said funds to TCB's loans instead of payment to medical malpractice claims." (Id. at 7).

"On October 22, 2020, the Circuit Court of Hillsborough County, Florida, entered [an Order Granting Assignee's Motion for Order Authorizing Compromise of Controversy with TCB as Administrative Agent for Lender Group ("Lien Challenge Deadline Order")] upon Assignee's assertion that the Assignee was taking no action to challenge TCB's liens." (Id. at 14).

That order "provide[d] for discovery for [the Langstons] and establishe[d] November 15, 2020, as the deadline for any party in interest, excluding the Assignee, to challenge TCB's . . . liens." (Id. at 2). The Langstons have moved for reconsideration of the Lien Challenge Deadline Order, and have also appealed that order. (Doc. # 9 at 14).

On November 15, 2020, the Langstons filed a "supplemental proceeding" in the Assignment Case "alleging a cause of action to subordinate TCB's liens by way of the Assignee's rights to challenge liens as provided by [Section] 727.110, Fla. Stat." (Id. at 5).

Additionally, the Langstons filed this action in state court on the same day. In the original complaint in this action, the Langstons asserted claims for breach of contract (third party beneficiary), aiding and abetting fraud, "declaratory relief requiring the funding of the Cash Reserve Account," and civil conspiracy to breach fiduciary duty against TCB. (Doc. # 1-1). TCB removed the case to this Court on the basis of diversity jurisdiction on December 11, 2020. (Doc. # 1).

The Langstons then moved to have the Court abstain and remand this case under Brillhart v. Excess Ins. Co., 316 U.S. 491 (1942), Colorado River Water Conser. Dist. v. United

4

States, 424 U.S. 800 (1976), Burford v. Sun Oil Co., 319 U.S.

315 (1943), and Louisiana Power & Light Co. v. City of

Thibodaux, 360 U.S. 25 (1959). (Doc. # 9). However, the

Langstons have withdrawn their argument regarding Brillhart

abstention. (Doc. # 36). TCB has responded (Doc. # 35), and

the Motion is ripe for review.

Notably, after filing the Motion, the Langstons filed

their amended complaint (Doc. # 33), which drops their breach

of contract and declaratory relief claims. Instead, the

amended complaint asserts claims for aiding and abetting

fraud, aiding and abetting breach of fiduciary duty, civil

conspiracy to commit fraud, civil conspiracy to breach

fiduciary duty, and negligence. (Id.).

## II.  Discussion

Because the Langstons have since withdrawn their

Brillhart abstention argument (Doc. # 36), the Court need

only address whether abstention is appropriate under Colorado

River, Burford, and Thibodaux.

### A.    Colorado River Abstention

#### i.    Legal Standard

The Colorado River doctrine "addresses the circumstances

in which federal courts should abstain from exercising their

jurisdiction because a parallel lawsuit is proceeding in one

5

or more state courts." Ambrosia Coal & Constr. Co. v. Pagés Morales, 368 F.3d 1320, 1327 (11th Cir. 2004). The Colorado River doctrine speaks equally to declining or staying consideration of a case. See, e.g., Clay v. AIG Aerospace Ins. Servs., Inc., 61 F. Supp. 3d 1255, 1266 (M.D. Fla. 2014); Fla. Dep't of Fin. Servs. v. Midwest Merger Mgmt., LLC, No. 4:07cv207-SPM/WCS, 2008 WL 3259045, at *5 (N.D. Fla. Aug. 6, 2008).

Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given them, and the general rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). "And while abstention as a general matter is rare, Colorado River abstention is particularly rare, permissible in fewer circumstances than are the other abstention doctrines." Jackson–Platts v. Gen. Elec. Cap. Corp., 727 F.3d 1127, 1140 (11th Cir. 2013). "[A] federal court may dismiss an action because of parallel state court litigation only under 'exceptional' circumstances . . . . Indeed, 'only the clearest of justifications will warrant dismissal.'" Am. Bankers Ins.

Co. of Fla. v. First State Ins. Co., 891 F.2d 882, 884 (11th Cir. 1990)(quoting Colorado River, 424 U.S. at 818–19).

"The principles of this doctrine 'rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" Moorer v. Demopolis Waterworks & Sewer Bd., 374 F.3d 994, 997 (11th Cir. 2004)(quoting Colorado River, 424 U.S. at 817, and emphasizing that courts "may defer to a parallel state proceeding under 'limited' and 'exceptional' circumstances").

"To determine whether abstention is merited under Colorado River, a court must decide as a threshold matter whether there is a parallel state action — that is, 'one involving substantially the same parties and substantially the same issues.'" Sini v. Citibank, N.A., 990 F. Supp. 2d 1370, 1376 (S.D. Fla. 2014)(quoting Jackson-Platts, 727 F.3d at 1140). However, the state and federal cases need not share identical parties and issues to be considered parallel for purposes of Colorado River abstention. Ambrosia Coal, 368 F.3d at 1329–30; O'Dell v. Doychak, No. 6:06-cv-677-ORL-19KRS, 2006 WL 4509634, at *6 (M.D. Fla. Oct. 20, 2006)("Parallel proceedings do not have to involve identical parties, issues and requests for relief."). Importantly,

7

however, "[a]ny doubt regarding the parallel nature of the [state court] suit should be resolved in favor of exercising jurisdiction." R.E. Loans, LLC v. Eagle Grp. Brokers, LLC, No. 3:08CV76/MCR, 2009 WL 837668, at *2 (N.D. Fla. Mar. 30, 2009)(citation omitted).

Assuming satisfaction of that threshold issue, the Eleventh Circuit

> has catalogued six factors that must be weighed in analyzing the permissibility of abstention, namely: (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights.

Ambrosia Coal, 368 F.3d at 1331.

"In addition, the Eleventh Circuit [has] noted two policy considerations that may influence whether a Colorado River abstention is appropriate: (1) whether the litigation is 'vexatious or reactive in nature,' and (2) whether the concurrent cases involve a federal statute that evinces a policy favoring abstention." Beepot v. J.P. Morgan Chase Nat'l Corp. Servs., Inc., No. 3:10-cv-423-J-34TEM, 2011 WL 4529604, at *8 (M.D. Fla. Sept. 30, 2011)(citing Ambrosia Coal, 368 F.3d at 1331).

Balancing all the factors must be "heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983). Throughout this analysis, there remains a "presumption in favor of the federal court retaining jurisdiction." Am. Bankers, 891 F.2d at 885; Moses H. Cone, 460 U.S. at 25–26 ("[O]ur task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction by the federal court; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of justifications, to justify the surrender of jurisdiction." (quotation omitted)).

### ii.  Analysis

The Langstons argue that Colorado River abstention is appropriate because the supplemental proceeding pending in state court and their appeal of the Lien Challenge Deadline Order are parallel to this action. (Doc. # 9 at 12). The Court disagrees.

While the supplemental proceeding and this action involve the same parties, the two actions do not involve substantially similar issues. In the supplemental proceeding, the Langstons are attempting to enforce alleged obligations under the Credit Agreement and to challenge TCB's liens. But

9

in this action, the amended complaint merely asserts damages

claims for aiding and abetting fraud, aiding and abetting

breach of fiduciary duty, civil conspiracy to commit fraud,

civil conspiracy to breach fiduciary duty, and negligence

predicated upon TCB allegedly conspiring or ignoring LSI's

violations of Florida law. (Doc. # 33).

True, the Credit Agreement is still relevant to this

case. But with the original complaint's declaratory relief

claim to enforce alleged obligations under the Credit

Agreement having been voluntarily dismissed by the Langstons,

there is no longer a substantial overlap in issues between

this case and the supplemental proceeding.

Resolution of the supplemental proceeding will not

resolve this case. See Moses H. Cone, 460 U.S. at 28 ("[T]he

decision to invoke Colorado River necessarily contemplates

that the federal court will have nothing further to do in

resolving any substantive part of the case, whether it stays

or dismisses."); see also Pete Vicari Gen. Contractor, LLC v.

Ohio Cas. Ins. Co., 17-23733-CIV, 2017 WL 10187643, at *4

(S.D. Fla. Dec. 11, 2017)(holding state and federal actions

not parallel because "resolution of the state court case . .

. would not leave the Court with 'nothing further to do' in

[the federal case]").

So too with the Langstons' attempt to overturn the Lien Challenge Deadline Order. Their appeal of that order is another part of their attempt to subordinate TCB's liens. But the Langstons are no longer seeking the subordination of TCB's liens in this action. Thus, resolution of the appeal of the Lien Challenge Deadline Order will not resolve this action and that appeal is not parallel with this case.

In short, the "Court has more than a 'substantial doubt' about whether this case and the state court [proceedings] have substantially similar issues — the [] cases are not in fact parallel." Id. Because this action is not parallel to the pending state court proceedings, Colorado River abstention is inappropriate.

Even if the other proceedings were parallel to this action, the Colorado River factors do not support abstention. Regarding the first factor (the order of assuming jurisdiction over property), "this factor applies only where there is a proceeding in rem." Jackson-Platts, 727 F.3d at 1141. "[W]here there is no *real* property at issue, this factor does not favor abstention." Id. (quotations and citation omitted). The Court is not persuaded that the supplemental proceeding (as opposed to the Assignment Case as a whole) is an in rem proceeding over real property. And this action

11

certainly is not an in rem proceeding. Regardless, this case and the supplemental proceeding were filed on the same day. Thus, even if the state court obtained jurisdiction over real property in the supplemental proceeding, it did not do so *before* this action was filed. Therefore, the first factor does not weigh in favor of abstention.

The Langstons admit that the second factor — the inconvenience of the federal forum — does not favor abstention because the state court and this Court are located in the same city. (Doc. # 9 at 15). The order of filing factor also does not favor abstention much because, again, this action and the supplemental proceeding were filed on the same day and both cases are still in the early pleading stages. (Doc. # 35 at 12-13). Even though the Assignment Case was filed years earlier, the date of filing of the allegedly parallel supplemental proceeding is the relevant date here. While the Lien Challenge Deadline Order was issued a few weeks before this case was filed, this close proximity in time is of minimal significance.

Next, the "potential for piecemeal litigation" factor "does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious."

12

Ambrosia Coal, 368 F.3d at 1333. First, the Court agrees with TCB that the litigation in this case is inevitably piecemeal, as the Langstons have filed numerous separate cases and appeals. And the Langstons have not shown that the piecemeal litigation here would be "abnormally excessive." This factor does not support abstention.

Regarding the fifth factor, state law will apply in this action. (Doc. # 9 at 16). But "the mere fact that state law applies is not enough to warrant abstention." Barone v. Wells Fargo Bank, N.A., 709 F. App'x 943, 950 (11th Cir. 2017). "[T]his factor favors abstention only where the applicable state law is particularly complex or best left for state courts to resolve." Jackson-Platts, 727 F.3d at 1143. The state law torts asserted in this case, although involving alleged fraud and conspiracy, are not so complex that they are better left to the state court. See Barone, 709 Fed. App'x at 950 ("Federal courts routinely address state-law claims such as Barone's, which include breach of contract, breach of fiduciary duty, defamation, and fraud."). This factor does not weigh in favor of abstention.

Finally, the sixth factor — the adequacy of the state court to protect the parties' rights — is neutral. While the Court agrees with the Langstons that the state court could

13

protect the parties' rights (Doc. # 9 at 16), this Court will also protect the parties' rights. "[T]he fact that *both* forums are adequate to protect the parties' rights merely renders this factor neutral." Jackson-Platts, 727 F.3d at 1143 (citation omitted).

Because this action and the state proceedings are not parallel and, even if they were, the factors do not weigh in favor of abstention, the Court will not abstain under Colorado River.

### B.   **Burford**

Burford "requires a court to abstain 'when exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" Kurlander v. Kaplan, No. 8:19-cv-644-T-02CPT, 2019 WL 3944335, at *3 (M.D. Fla. Aug. 21, 2019)(quoting Sabato v. Fla. Dept. of Ins., 768 F. Supp. 1562, 1565 (S.D. Fla. 1991)). "As such, situations warranting Burford abstention are extraordinary." Id. The Supreme Court has emphasized that, "[w]hile Burford is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for

conflict' with state regulatory law or policy." New Orleans
Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S.
350, 362 (1989).

The Court does not consider the existence of the
Assignment Case to be sufficient grounds to abstain in this
case. As TCB persuasively puts it: "Because the liquidation
of LSI in the Assignment Cases is at best peripheral to the
issues at bar — which involve state-law tort claims against
LSI's lender — this suit does not implicate broad regulatory
concerns so as to warrant Burford abstention." (Doc. # 9 at
16). Indeed, the Court is not persuaded that federal
adjudication of this case would "disrupt the State's attempt
to ensure uniformity in the treatment of an 'essentially local
problem.'" New Orleans Pub. Serv., Inc., 491 U.S. at 362
(citation omitted).

The Motion is denied as to Burford abstention.

### C.    Thibodaux

Finally, the Langstons seek abstention under the
Thibodaux abstention doctrine. (Doc. # 9 at 20-23).

"In Thibodaux, the Supreme Court instructed that federal
district courts should abstain from adjudicating matters
before them where: (1) jurisdiction is predicated solely on
diversity; (2) the case involves an unsettled question of

state law; and (3) the subject matter of the unsettled question implicates important state interests." Bank of N.Y. Mellon v. Jefferson Cnty., No. 2:08-CV-01703-RDP, 2009 WL 10704121, at *23 (N.D. Ala. June 12, 2009). "Application of the Thibodaux doctrine is appropriate when the District Court is presented with 'cases raising issues intimately involved with the States' sovereign prerogative, the proper adjudication of which might be impaired by unsettled questions of state law.'" State Farm Mut. Auto. Ins. Co. v. Physicians Grp. of Sarasota, L.L.C., 9 F. Supp. 3d 1303, 1307 (M.D. Fla. 2014)(quoting Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 717 (1996)).

The Langstons emphasize that "Florida has vested the Circuit Court with jurisdiction over Chapter 727 actions" and they assert this case "will center on the scope of the rights of a creditor in a state case liquidating an insolvent company under a Petition for an Assignment for Benefit of Creditors under Florida's Chapter 727 to sue the debtor's lender." (Doc. # 9 at 21). They maintain there are unsettled questions of state law because "[t]here are no reported state appellate cases dispositive of the issues relating to the scope of standing of creditors to challenge the liens of a debtor

assignor's lenders or to sue the debtor Assignor's lenders."
(Id. at 22).

While the Court understands the Langstons' desire to
have all cases involving LSI and TCB litigated in state court,
the Court concludes that Thibodaux abstention is unwarranted.
TCB is correct that the claims of the amended complaint —
which do not include a declaratory relief claim regarding
enforcement of TCB's liens — do not involve an unclear or
unsettled question of law, but rather present typical issues
of state tort law. (Doc. # 35 at 17). While the Assignment
Cases are brought under Chapter 727, no claims under that law
are asserted in this case and the adjudication of the tort
claims in this case should not impact the Chapter 727
proceedings.

In short, Thibodaux abstention does not apply.

## III.  Conclusion

This case does not present any exceptional circumstances
that warrant abstention under any of the various abstention
doctrines. As such, the Motion is denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Plaintiffs Shirley Langston and John Langston's Amended
Motion to Abstain and Remand (Doc. # 9) is **DENIED.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this

20th day of January, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE