UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHIRLEY LANGSTON and
JOHN LANGSTON,

Plaintiffs,

v. Case No. 8:20-cv-2954-VMC-AAS

TEXAS CAPITAL BANK, NATIONAL
ASSOCIATION, as Administrative
Agent, Swing Line Lender,
and L/C issuer,

Defendant.
______________________________/

**ORDER**

This matter comes before the Court upon consideration of Defendant Texas Capital Bank National Association's ("TCB") Motion to Transfer Venue (Doc. # 8), filed on December 15, 2020. Plaintiffs Shirley Langston and John Langston responded on January 12, 2021. (Doc. # 34). At the Court's direction, TCB replied (Doc. # 45), and the Langstons filed a sur-reply. (Doc. # 48). For the reasons that follow, the Motion is denied.

## I. Background

The Langstons initiated this action in state court on November 15, 2020. (Doc. # 1-1). TCB removed the case to this Court on the basis of diversity jurisdiction on December 11,

2020. (Doc. # 1). In the amended complaint, the Langstons assert claims against TCB for aiding and abetting fraud, aiding and abetting breach of fiduciary duty, civil conspiracy to commit fraud, civil conspiracy to breach fiduciary duty, and negligence. (Doc. # 33).

The Court has already outlined the factual and procedural history of this case and the related state court proceedings in its Order declining to abstain. (Doc. # 38). The Langstons are involved in malpractice litigation against Laser Spine Institute, LLC ("LSI") — a medical practice that is in the process of being liquidated through Assignment for Benefit of Creditors proceedings in Florida state court. (Doc. # 33 at 1-2, 10-13). LSI allegedly "caused LSI's employee physicians to fraudulently conceal from patients the fact that LSI's physician employees were practicing medicine in violation of the Financial Responsibility requirements of § 458.320, Fla. Stat." (Id. at 8).

TCB was one of LSI's lenders under a credit agreement. (Id. at 2-3). It loaned LSI over $150,000,000.00 through a 2015 "Credit Agreement" that provided, in pertinent part, that LSI was required to hold $10,000,000.00 in a "Cash Reserve Account" for, among other things, the payment of medical malpractice claims. (Id. at 3-5). "TCB had the power

to require LSI to maintain the Cash Reserve Account, and TCB retained the 'sole discretion' to waive the Cash Reserve Account only upon (a) LSI's written request and (b) TCB's determination that 'all medical malpractice claims and potential litigation related to such claims are properly reserved for in the Cash Reserve Account in amounts that are considered commercially reasonable.'" (Id. at 5).

According to the Langstons, "TCB had actual knowledge that LSI was not maintaining customary professional liability insurance as required by Florida law and as required by Section 7.5 of the Credit Agreement." (Id. at 6). "Instead of requiring LSI to comply with Florida law, TCB instead retained sole discretion upon LSI's request to fund LSI's Cash Reserve Account to fund medical malpractice claims, while maintaining a first priority lien on said Cash Reserve Account and thereby maintaining the discretion to apply said funds to TCB's loans instead of payment to medical malpractice claims." (Id. at 7). As a result, the Langstons maintain that TCB, among other things, conspired with LSI and aided and abetted LSI's breaches of fiduciary duty regarding compliance with Florida's requirements for malpractice coverage. (Id. at 14-30).

Now, TCB moves to transfer this case to the United States District Court for the Northern District of Texas because the credit agreement between TCB and LSI (and others) contains a mandatory forum-selection clause in favor of Texas. (Doc. # 8). Section 12.12 of the credit agreement includes the following relevant language:

> (b) **Jurisdiction. <u>Each Borrower</u> irrevocably and unconditionally agrees that it will not commence any action, litigation or proceeding of any kind or description, whether in law or equity, whether in contract or in tort or otherwise, against Administrative Agent, any Lender, L/C Issuer, Swing Line Lender or any Related Party of the foregoing in any way relating to this Agreement or any other Loan Document or the transactions relating hereto or thereto, in any forum other than the courts of the State of Texas sitting in Dallas County, and of the United States District Court of the Northern District of Texas**, and any appellate court from any thereof, and **<u>each of the parties</u> hereto irrevocably and unconditionally submits to the jurisdiction of such courts and agrees that all claims in respect of any such action, litigation or proceeding may be heard and determined in such Texas State court or, to the fullest extent permitted by applicable law, in such federal court.** Each of the parties hereto agrees that a final judgment in any such action, litigation or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Nothing in this Agreement or in any other Loan Document shall affect any right that Administrative Agent, any Lender, L/C Issuer or Swing Line Lender may otherwise have to bring any action or proceeding relating to this Agreement or any other Loan Document against any Borrower or its properties in the courts of any jurisdiction.

> (c) **Waiver of Venue. Each Borrower irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any objection that it may now or hereafter have to the laying of venue of any action or proceeding arising out of or relating to this Agreement or any other Loan Document in any court referred to in paragraph (b) of this Section. Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by applicable law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.**

(Id. at 116-117)(emphasis added).

The Langstons have responded (Doc. # 34), TCB has replied (Doc. # 45), and the Langstons have filed a sur-reply. (Doc. # 48). The Motion is ripe for review.

## II. Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Ordinarily, "[t]o transfer an action under [S]ection 1404(a) the following criteria must be met: (1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) a transfer is in the convenience of the witnesses and parties." i9 Sports Corp. v.

Cannova, No. 8:10-cv-803-VMC-TGW, 2010 WL 4595666, at *3 (M.D. Fla. Nov. 3, 2010)(citation omitted).

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex., 571 U.S. 49, 63 (2013)(citation omitted). "[A] valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." Id. (citation omitted). So, the Court "should not consider arguments about the parties' private interests." Id. at 64. "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." Id. "A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." Id. "A district court may only consider arguments regarding public-interest factors." Loeffelholz v. Ascension Health, Inc., 34 F. Supp. 3d 1187, 1190 (M.D. Fla. 2014).

## III. Analysis

TCB's argument fails because the Langstons are not bound by the forum-selection clause in the credit agreement. By its

terms, the forum-selection clause only applies to "each borrower" and "each of the parties" to the credit agreement. (Doc. # 8 at 116-117). Yet, the Langstons are not "borrowers" under the agreement, nor are they parties to the agreement.

It is true the Langstons had asserted breach of contract claims premised on the credit agreement in their original complaint, in which they argued they were third-party beneficiaries of the credit agreement. (Doc. # 1-1 at 15-16). This is why TCB argues in its Motion that "to the extent that [the Langstons] intend to interject themselves as parties to the Credit Agreement by way of their breach of contract and declaratory judgment claims, they may only enforce the Credit Agreement pursuant to its terms." (Doc. # 8 at 6).

But, after the filing of this Motion, the Langstons have dropped the breach of contract and declaratory judgment claims. The amended complaint, while referencing the credit agreement, does not contain a claim for violation of the credit agreement. (Doc. # 33). The Langstons are no longer arguing that they are third-party beneficiaries under the agreement.

"In order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound."

Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1299 (11th Cir. 1998)(citation omitted); Deloitte & Touche v. Gencor Indus., Inc., 929 So. 2d 678, 683 (Fla. 5th DCA 2006)("Florida courts have enforced contract terms, including forum selection clauses, against non-signatories. This is particularly true where, as here, there exists a close relationship between the non-signatory and signatory and the interests of the non-signatory are derivative of the interests of the signatory." (citations omitted)). "[T]he Lipcon court found that the non-signing parties were bound by the choice of law and choice of forum clauses where the parties' rights were 'completely derivative of those of the [signing parties] — and thus "directly related to, if not predicated upon, the interests of the [signing parties]."'" Cooper v. Meridian Yachts, Ltd., 575 F.3d 1151, 1170 (11th Cir. 2009)(quoting Lipcon, 148 F.3d at 1299).

While the Court understands that the terms of the credit agreement between TCB and LSI will be important for this case, the Langstons' claims in the amended complaint are not completely derivative of LSI and TCB's rights under the credit agreement. The Langstons, who merely became patients at LSI after the credit agreement was entered between LSI and TCB, are not "closely related" to LSI and it was not foreseeable

that the Langstons would be bound by the forum selection clause. This is not a case where, despite being non-signatories, the Langstons were mentioned in the credit agreement or were bound by any terms of the agreement. See MoistTech Corp. v. Sensortech Sys., Inc., No. 8:15-cv-434-EAK-TBM, 2015 WL 3952341, at *2 (M.D. Fla. June 26, 2015)(holding that non-signatory company MoistTech was "'so closely related' to the dispute that it was foreseeable that it would be bound by the forum-selection clause" where it was "omnipresent throughout the Agreement," the signatory owners of MoistTech "agreed 'to pay, perform, or discharge and shall cause MoistTech Corp. to pay, perform, or discharge all debts, liabilities, contracts and obligations relating to the MoistTech assets," and MoistTech was "both benefitted and burdened" by certain terms of the agreement). Rather, the Langstons were patients at LSI who maintain there is no coverage for their malpractice claims because TCB aided or conspired with LSI not to require sufficient insurance or to fund the Cash Reserve Account.

Thus, the Langstons are not bound by the forum selection clause. And TCB does not argue that transfer to the Northern District of Texas is otherwise appropriate under the

traditional Section 1404(a) analysis. Therefore, the Court will not transfer the case.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Texas Capital Bank National Association's Motion to Transfer Venue (Doc. # 8) is **DENIED.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 18th day of February, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE