UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHIRLEY LANGSTON and
JOHN LANGSTON,

    Plaintiffs,

v.                           Case No. 8:20-cv-2954-VMC-AAS

TEXAS CAPITAL BANK, NATIONAL
ASSOCIATION, as Administrative
Agent, Swing Line Lender,
and L/C issuer,

    Defendant.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant Texas Capital Bank National Association's ("TCB") Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. # 37), filed on January 19, 2021. Plaintiffs Shirley Langston and John Langston responded on February 9, 2021. (Doc. # 49). For the reasons that follow, the Motion is granted as set forth herein.

**I.**   **Background**

The Langstons initiated this action in state court on November 15, 2020. (Doc. # 1-1). TCB removed the case to this Court on the basis of diversity jurisdiction on December 11, 2020. (Doc. # 1). In the amended complaint, the Langstons

1

assert claims against TCB for aiding and abetting fraud, aiding and abetting breach of fiduciary duty, civil conspiracy to commit fraud, civil conspiracy to breach fiduciary duty, and negligence. (Doc. # 33).

The facts of this case are well-known to the parties and the Court. In 2016, Dr. Thomas Francavilla performed surgery on Mrs. Langston, even though he allegedly did not carry the required medical malpractice insurance. (Id. at 10-12). As a result of that surgery, the Langstons are involved in malpractice litigation against Dr. Francavilla and his then-employer, the Laser Spine Institute, LLC ("LSI") — a medical practice that is in the process of being liquidated through Assignment for Benefit of Creditors proceedings in Florida state court. (Id. at 1-2, 10-13).

According to the Circuit Court's docket, the malpractice case is still pending. See Langston v. Laser Spine Inst., Case No. 17-CA-10423 in the Circuit Court of Hillsborough County, Fla. Indeed, in their amended motion to abstain and remand filed in this case, the Langstons acknowledged that the malpractice case is pending and "will affect the liquidation of [the Langstons'] damages, and also be an element in [the] Langstons' damage claims against TCB" in this case. (Doc. # 9 at 7-8).

The amended complaint in this case alleges that LSI "caused LSI's employee physicians to fraudulently conceal from patients the fact that LSI's physician employees were practicing medicine in violation of the Financial Responsibility requirements of [Section] 458.320, Fla. Stat." (Doc. # 33 at 8).

TCB was one of LSI's lenders. (Id. at 2-3). It loaned LSI over $150,000,000.00 through a 2015 Credit Agreement that provided, in pertinent part, that LSI was required to hold $10,000,000.00 in a "Cash Reserve Account" for, among other things, the payment of medical malpractice claims. (Id. at 3-5). "TCB had the power to require LSI to maintain the Cash Reserve Account, and TCB retained the 'sole discretion' to waive the Cash Reserve Account only upon (a) LSI's written request and (b) TCB's determination that 'all medical malpractice claims and potential litigation related to such claims are properly reserved for in the Cash Reserve Account in amounts that are considered commercially reasonable.'" (Id. at 5). "However, TCB held a first lien securing all of LSI's borrowing under the Credit Agreement, including a first lien on any amounts designed as the Cash Reserve Account. By this means, TCB controlled whether or not funds were available to pay LSI's medical malpractice claims." (Id.).

According to the Langstons, "TCB had actual knowledge that LSI was not maintaining customary professional liability insurance as required by Florida law and as required by Section 7.5 of the Credit Agreement." (Id. at 6). "Instead of requiring LSI to comply with Florida law, TCB instead retained sole discretion upon LSI's request to fund LSI's Cash Reserve Account to fund medical malpractice claims, while maintaining a first priority lien on said Cash Reserve Account and thereby maintaining the discretion to apply said funds to TCB's loans instead of payment to medical malpractice claims." (Id. at 7). As a result, the Langstons maintain that TCB, among other things, conspired with LSI, aided and abetted LSI's breaches of fiduciary duty regarding compliance with Florida's requirements for malpractice coverage, and was negligent. (Id. at 14-30).

TCB moves to dismiss the amended complaint on numerous grounds, including ripeness and failure to state a claim. (Doc. # 37). The Langstons have responded (Doc. # 49), and the Motion is ripe for review.

## II. Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the

4

plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

Additionally, motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may attack jurisdiction facially or factually. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003). Where the

jurisdictional attack is based on the face of the pleadings, the Court merely looks to determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the plaintiff's complaint are taken as true for purposes of the motion. <u>Lawrence v. Dunbar</u>, 919 F.2d 1525, 1529 (11th Cir. 1990). "[A] dismissal on ripeness grounds more properly falls under the umbrella of a Rule 12(b)(1) dismissal for lack of subject matter jurisdiction" than under Rule 12(b)(6) for failure to state a claim. <u>Valley Creek Land & Timber, LLC v. Colonial Pipeline Co.</u>, 432 F. Supp. 3d 1360, 1363 (N.D. Ala. 2020)

### III. **<u>Analysis</u>**

The Court agrees with TCB that this case must be dismissed without prejudice as unripe. (Doc. # 37 at 4-5, 9-11).

"The doctrine of ripeness, which originates from the Constitution's Article III requirement that courts only hear actual cases and controversies, presents a 'threshold jurisdictional question of whether a court may consider the merits of a dispute.'" <u>Valley Creek Land & Timber, LLC</u>, 432 F. Supp. 3d at 1365 (quoting <u>Elend v. Basham</u>, 471 F.3d 1199, 1204-05 (11th Cir. 2006)). "In addition to jurisdictional considerations, ripeness also involves judicial prudence;

6

even when the case meets the constitutional minimum for jurisdiction, 'prudential considerations may still counsel judicial restraint.'" Id. (quoting Digit. Props., Inc. v. City of Plantation, 121 F.3d 586, 589 (11th Cir. 1997)). Courts "assess ripeness on a claim-by-claim basis." Club Madonna, Inc. v. City of Miami Beach, 924 F.3d 1370, 1380 (11th Cir. 2019).

Ripeness is "designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Wollschlaeger v. Governor, Fla., 848 F.3d 1293, 1304 (11th Cir. 2017)(citation and internal quotation marks omitted). "The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of merely potential or abstract disputes." Valley Creek Land & Timber, LLC, 432 F. Supp. 3d at 1365. Thus, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998)(citation and internal quotation marks omitted).

"In assessing whether a dispute is concrete enough to be ripe, [courts] evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of

7

withholding court consideration." Wollschlaeger, 848 F.3d at 1304 (citation and internal quotation marks omitted). "Concerning fitness for judicial decision, [courts] ask whether the parties raise an issue that [courts] can decide without further factual development and whether the institutional interests of the court and agency favor immediate review." Club Madonna, Inc., 924 F.3d at 1380. "As for hardship, litigants must show that they are forced to choose between foregoing lawful activity and risking substantial legal sanctions." Id. (citation and internal quotation marks omitted).

This case is not ripe because the Langstons have not brought their claims at the right time. See Valley Creek Land & Timber, LLC, 432 F. Supp. 3d at 1365 ("When examining ripeness, the court considers whether this is the correct time for the complainant to bring the action." (citation and internal quotation marks omitted)). The Court has taken judicial notice — and the Langstons have acknowledged in their amended motion to abstain and remand (Doc. # 9 at 7-8) — that the Langstons' malpractice case against Dr. Francavilla and LSI is still pending in state court. See Fed. R. Evid. 201(b)("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally

8

Case 8:20-cv-02954-VMC-AAS   Document 51   Filed 02/23/21   Page 9 of 11 PageID 3285

known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); Chapman v. Abbott Lab'ys., 930 F. Supp. 2d 1321, 1323 (M.D. Fla. 2013)("If a court takes judicial notice of documents pertinent to a motion to dismiss, it need not convert the motion to dismiss into a motion for summary judgment."). As such, no judgment has been entered yet on their medical malpractice claims.

Yet, their claims in this case hinge on the assertion that TCB engaged in conduct that resulted in the Langstons' being unable to collect on a malpractice judgment through malpractice insurance or other funds of LSI. The main thrust of the amended complaint is that TCB unlawfully allowed LSI to have its employees practice medicine without sufficient insurance and also enabled LSI to not keep the Cash Reserve Account funded to pay malpractice claims. (Doc. # 33 at 5-7). Thus, as TCB persuasively puts it, "[u]nless and until [the Langstons] secure a judgment in the underlying malpractice case and are subsequently unable to collect because of a lack of insurance, [the Langstons] have sustained no damages under any of their theories against TCB." (Doc. # 37 at 5); see JWC Hamptons, Inc. v. Empire Indem. Ins. Co.,

9

No. 0:19-CV-62232, 2020 WL 37571, at *2 (S.D. Fla. Jan. 3, 2020)(dismissing negligent procurement of insurance claim against insurance broker as unripe because the viability of that claim "is entirely contingent upon the resolution of" plaintiff's breach of contract claims against its insurance company and so plaintiff "has not suffered any damages caused by [the insurance broker] and cannot state a claim for negligence"), report and recommendation approved, No. 19-62232-CIV, 2020 WL 2850586 (S.D. Fla. Jan. 24, 2020).

In short, the issues in this case are not fit for judicial determination at this time, as the Langstons will not have sustained an injury as a result of TCB's alleged conduct unless and until they have obtained a judgment on their malpractice claims for which they have been unable to collect. See Parham v. Fla. Health Scis. Ctr., Inc., 35 So. 3d 920, 928 (Fla. 2d DCA 2010)("There would be no legal injury sustained as a result of the alleged misrepresentation if the medical treatment had been acceptable. Thus, if the child had successfully responded to the medical treatment as anticipated by Dr. Saste, there would be no damages in fraud even if Dr. Saste had expressly made a representation of fact that she would obtain an immediate surgical consult and then had not obtained it.").

Regarding hardship, the Langstons have not shown "that they are forced to choose between foregoing lawful activity and risking substantial legal sanctions." Club Madonna, Inc., 924 F.3d at 1380. Rather, the Langstons themselves have expressed an intention to move to stay this case "pending the liquidation of the underlying damages claim in state court." (Doc. # 31 at 1; Doc. # 27 at 2).

Thus, this case is not yet ripe and is dismissed without prejudice. If and when the Langstons obtain a judgment in their medical malpractice case, they may refile this action.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Texas Capital Bank National Association's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. # 37) is **GRANTED.**

(2) This case is dismissed without prejudice as unripe.

(3) The Clerk is directed to **CLOSE** this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 23rd day of February, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

11